# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 13, 2016

## ANTHONY DEWIGHT WASHINGTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2010-C-1906    Cheryl A. Blackburn, Judge**

_____

**No. M2015-02309-CCA-R3-PC – Filed September 22, 2016**

_____


Anthony Dewight Washington ("the Petitioner") appeals the post-conviction court's denial of his petition for post-conviction relief. The Petitioner argues that trial counsel's performance was deficient in failing to file a motion asking for the recusal of the trial judge, failing to file a motion to suppress evidence from a search of the Petitioner's home, and failing to communicate with the Petitioner, investigate witnesses, and develop a trial strategy or defense. The Petitioner argues that counsel's deficiency prejudiced him because, but for the deficiencies, he would have accepted the State's plea offer instead of proceeding to trial. Upon thorough review of the appellate record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Jesse Pratt Lords, Nashville, Tennessee, for the appellant, Anthony Dewight Washington.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Glenn Funk, District Attorney General; and Megan King, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

*Jury Trial*

The Petitioner was indicted by the Davidson County Grand Jury for one count of possession with the intent to sell or deliver 0.5 grams or more of a substance containing cocaine in a drug-free zone, one count of possession of marijuana, and one count of possession of drug paraphernalia. Following a trial, a jury convicted the Petitioner of possession with the intent to sell or deliver 0.5 grams or more of a substance containing cocaine in a drug-free zone, and the trial court sentenced the Petitioner, as a Range III persistent offender, to thirty years' incarceration, with the first twenty years to be served at 100%. On direct appeal, this court summarized the facts presented at trial as follows:

> At the trial, David Kline of the Metropolitan Nashville Planning Department testified that his office was responsible for preparing maps for various governmental uses. He identified an aerial photograph depicting Bordeaux Gardens Park and its vicinity. The photograph contained computer-generated lines marking the park's boundaries and other lines marking the distance of 1000′ from the park's boundaries. On cross-examination, he acknowledged that he would recognize visually if the 1000′ line was off by 500′ but that he would not recognize a five-foot variance. He said there was no calibration of the computer to ensure its accuracy in determining the 1000′ measurement.
>
> Metro Nashville Police Officer Byron Carter testified that on May 14, 2010, he and several other officers executed a search warrant at a house at 3244 Crow Drive. He marked the address on the aerial photograph, which showed the residence was within the 1000′ border surrounding Bordeaux Gardens Park. He said the warrant permitted a search of the house, vehicles, and people at the residence. He said that a metal storm door was closed but a wood door was open and that he saw the [Petitioner] inside. He said that the [Petitioner] closed the wood door and ran. He said the police entered forcibly after trying to open the door and discovering it was locked. He said that before forcing open the door, they knocked and announced that they were police officers. He said that patrol car blue lights were activated in front of the house and that a loud speaker was used to announce that the police were there to execute a search warrant. He said that when they entered the home, the [Petitioner] and a woman stood about five feet from the door. The [Petitioner's] mother was upstairs.

Officer Carter testified that Officer Grindstaff searched the [Petitioner] and found a clear bag containing a white rock weighing 5.7 grams in the [Petitioner's] right front pants pocket. The rock field tested positive for cocaine. Officer Grindstaff also found a clear bag of white powder in the pocket. The powder weighed one and one-half grams and field tested positive for cocaine. Officer Carter said the weights were approximate. He said that a marijuana grinder and a "blunt" splitter were found upstairs where the [Petitioner's] mother was. He said there was marijuana residue inside the grinder. He said Officer Grindstaff found a clear bag of marijuana and a black digital scale with white residue inside the console of a Hummer H3 in the driveway. He said the white residue field tested positive for cocaine. He identified photographs of the items found. He also identified as exhibits the bag containing the rock, the bag containing the powder, the bag containing the marijuana, the marijuana grinder, the blunt splitter, and the scale. He said no crack pipe was recovered during the search.

Officer Carter testified that he recorded a conversation with the [Petitioner]. He did not think the [Petitioner] knew the conversation was recorded. He said that he advised the [Petitioner] of his rights and that the [Petitioner] agreed to talk to him. The recording was played for the jury. In it, Officer Carter inquired whether the marijuana in the Hummer belonged to the [Petitioner]. He told the [Petitioner] he knew that either the [Petitioner] or the [Petitioner's] mother drove the Hummer. When asked whether Officer Carter should charge the [Petitioner] or the [Petitioner's] mother for the marijuana, the [Petitioner] replied that he should be charged. The [Petitioner] also said he should be charged for the marijuana grinder. The [Petitioner] claimed he drove a Jeep Cherokee to pick up an unidentified woman and said he moved the Hummer to park the Cherokee in front of it. The [Petitioner] asked where the marijuana grinder and blunt splitter were found, and Officer Carter said, "Table right in front of her." The [Petitioner] offered to "give" the police a person called "Trouble." When asked about a gun, the [Petitioner] denied having one. Officer Carter asked which car he should seize, the Hummer or the Cherokee. Officer Carter said he would have to seize both cars unless the [Petitioner] told him which was used to transport drugs. Officer Carter said he told the [Petitioner] he saw the [Petitioner] driving the Hummer the previous day. Officer Carter said the [Petitioner's] mother denied any knowledge of the drugs in the Hummer. When asked about buying drugs from Trouble, the [Petitioner] said he purchased an "eight ball" or four grams of rock cocaine

- 3 -

at a time. When asked if he cooked cocaine to make it hard, the [Petitioner] said it was cooked when he bought it and that he just bagged it.

Officer Carter testified that he sometimes said things that were not true when interviewing suspects in order to get information. He said he had not actually seen the [Petitioner] drive the Hummer the previous day. He said an eight ball referred to one-eighth of one ounce or 3.5 grams of cocaine. He said that powder cocaine was sometimes cooked in a pan or microwave to make crack cocaine. He said the [Petitioner] had a microwave in the basement. Officer Carter said Officer Grindstaff was unavailable to testify due to SWAT training.

On cross-examination, Officer Carter testified that the drugs were weighed at the scene with their bags. He said the bag containing rock cocaine had more than one rock but that there were not individual bags for each rock. He said the [Petitioner] claimed to be employed. Officer Carter thought that both cars were registered to the [Petitioner's] mother. He agreed that the [Petitioner] lived in the basement and that the [Petitioner's] mother lived upstairs.

Detective Atif Williams testified that he was part of the team that executed the search warrant on May 14, 2010. He said that as they approached the door, the [Petitioner] saw them and slammed the door. He was present when Detective Grindstaff took a bag of crack cocaine and a bag of powder cocaine from the [Petitioner's] pocket. He did not recall recovering a crack pipe. On cross-examination, Detective Williams stated that he was not involved in searching the entire house but that other officers did. He said that if there was a crack pipe, it was not found and that it was possible they missed finding it. He was not aware of a gun being found in the house.

Tennessee Bureau of Investigation (TBI) Special Agent John Scott, a forensic chemistry expert, testified that he examined the evidence submitted for testing in this case. He said that the rock-like substance weighed 3.9 grams and was cocaine base. The white powder weighed seven-tenths of one gram and was cocaine. The plant-like material from two sources had a combined weight of 3.6 grams and was marijuana.

Metro Nashville Police Lieutenant William MacKall testified that he had been a police officer for twenty-one years and had worked in narcotics crimes for about sixteen and one-half years. He said he had investigated

- 4 -

both buyers and sellers of narcotics. He was familiar with the manufacturing, packaging, pricing, and use of narcotics. He said that crack cocaine was made by mixing it with a substance such as baking soda and cooking it to remove impurities until it reached a rock form. He said the rock was usually broken into smaller pieces by the person who cooked it and further broken into smaller pieces as it went down the drug distribution network.

Lieutenant MacKall testified that he made street-level purchases of crack cocaine hundreds of times and that a typical purchase for personal use was two-tenths of one gram for $20. He said this quantity was smaller than an eraser head. He said it would be smoked with a crack pipe consisting of a glass stem with a filter on one end, although other items such as miniature wine bottles, soda cans, and car antennas might be used.

Lieutenant MacKall testified that he was not involved in the present case except that he reviewed the evidence at the prosecutor's request. With respect to the exhibit of the bag containing several rocks of crack cocaine, he said that there were some rocks with a street value of $10 to $30. The value of 3.9 grams was $200 to $400. He said he had purchased crack cocaine for $20 both individually bagged and taken from a bag containing multiple rocks. He said the powder cocaine would sell for about $70. He said that digital scales were used to weigh drugs and that he had never known a purchaser to have scales. He said that when he arrested a crack cocaine user, the person typically possessed a glass pipe. He said that crack cocaine users were typically so addicted that they smoked it immediately when they bought it and that it would be unusual for such a person to keep crack cocaine in his or her possession. He said that the longer a person used crack cocaine, the less likely he or she would hold a job. He said it was typical to ask a street-level dealer to identify the person from whom they obtained drugs because the police always tried to get the "bigger fish."

On cross-examination, Lieutenant MacKall testified that he could not "see" a drug user buying large amounts of drugs from a street-level dealer. He said that rocks of crack cocaine and portions of powder cocaine were sometimes individually packaged. He said it was common for drug users who were arrested to want to identify the source of the drugs or to want to work as a confidential informant. He said the amount of crack cocaine involved in this case would have been a "good sized" rock had it not been broken and agreed it would not necessarily fit into a crack pipe. He said that larger amounts of drugs could be smoked with a soda can or a

miniature liquor bottle.  He was unaware of any such items being found during the search.  He said that at least one other person was in the house and acknowledged it was possible the drugs had been shared between individuals.  He said that in his experience, people made powder cocaine into crack cocaine in order to increase its potency.  He agreed that it was possible for three people to smoke 3.9 grams of crack cocaine in a weekend but said that every drug user he ever had contact with used drugs as soon as they obtained them.  The [Petitioner] did not offer proof.

State v. Anthony Dewight Washington, No. M2011-02678-CCA-R3-CD, 2012 WL 6115589, at *1-4 (Tenn. Crim. App. Dec. 10, 2012), perm. app. denied (Tenn. Mar. 5, 2013).  This court affirmed the judgment of the trial court on direct appeal, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal.

*Post-Conviction Proceedings*

On May 20, 2013, the Petitioner filed a timely pro se petition for post-conviction relief.  Following the appointment of post-conviction counsel, the Petitioner filed an amended petition for post-conviction relief.

At the post-conviction hearing, the Petitioner testified that trial counsel was appointed after he was indicted in 2010.  At his first court appearance, the Petitioner met with trial counsel, and she informed the Petitioner of the State's plea offer of a twenty-year sentence with a 35% release eligibility.  At that time, the Petitioner asked trial counsel to file a motion to suppress, to which she responded that "a judge will not overturn another judge."  Additionally, the Petitioner asked trial counsel to file a motion asking the trial court judge to recuse herself because the Petitioner had been found guilty and sentenced by that judge before.  The Petitioner testified that trial counsel did not file either motion that he requested.  At the Petitioner's second court appearance, he again asked trial counsel to file a motion to suppress all evidence found during the search of his residence on the grounds that the search lacked probable cause.  At his third court appearance, the Petitioner attempted to remove trial counsel from his case.  The Petitioner testified that he never went to trial counsel's office during the representation and that trial counsel only discussed the case with him on the Friday before trial.  On that court date, the Petitioner attempted to hire a new attorney, but the trial court would not let him replace trial counsel because the trial was scheduled to begin the following Monday.  The Petitioner stated that he first received his discovery at that court appearance and that he discussed with trial counsel subpoenaing the confidential informant and the Petitioner's girlfriend as defense witnesses.  The Petitioner testified that trial counsel's only defense strategy was to ask the jury to convict the Petitioner of a lesser included offense of simple possession.

- 6 -

Additionally, the Petitioner testified that trial counsel had received a letter from the State notifying her that the Petitioner could receive a thirty-year sentence, but counsel never showed that letter to the Petitioner. The Petitioner stated that trial counsel informed him that he would be sentenced as a Range II multiple offender. The Petitioner stated that, if he had known what sentence he was facing, he probably would have accepted the State's plea offer. The Petitioner also stated that he attempted to contact trial counsel to discuss issues to be raised in the motion for new trial but that she never responded to his letters until after the motion was denied. Additionally, the Petitioner asserted that he suggested some cases for trial counsel to include in his direct appeal, but she never responded to his communication. The Petitioner testified that he filed several motions to dismiss trial counsel as his appointed attorney throughout her representation but that the motions were always denied.

On cross-examination, the Petitioner agreed that he had previously pled guilty to ten felonies and thirty-seven misdemeanors and that he had approximately ten court appearances before the trial began in the current case. The Petitioner also agreed that the State had offered a plea deal "early on" in the case, which he rejected after trial counsel explained the offer. The Petitioner stated that he received the discovery in his case on the Friday before his first trial date, and when his trial was continued, he met with trial counsel several more times to discuss the case, including the trial strategy of arguing for a conviction on the lesser included offense of simple possession.

The post-conviction court then questioned the Petitioner, who testified that he wanted the trial judge to recuse herself because she had sentenced him in an earlier case. Additionally, the Petitioner clarified that he believed the warrant to search his home lacked probable cause because the police lacked physical evidence of a drug sale.

Trial counsel testified that she has been practicing law since 2008 and that almost all of her practice was criminal defense. Trial counsel stated that she was appointed to the Petitioner's case at the Petitioner's arraignment. After her appointment, trial counsel filed a motion to reduce the Petitioner's bond, which was not heard because the Petitioner had already made bond. Next, counsel filed a motion for discovery. Trial counsel testified that she met with the Petitioner at every court date and that she "asked him many times, in fact, almost to the point of begging to come to [her] office" to review discovery and prepare for trial, but the Petitioner instead ignored her or asked her to end the representation. Trial counsel stated that she discussed the State's plea offer with the Petitioner, particularly the fact that the Petitioner was a Range III offender and how ranges are calculated. Counsel also explained "the nature of a drug[-]free zone charge" and how that affected the Petitioner's case.

Further, trial counsel stated that she discussed trial strategy with the Petitioner, including what evidence would likely be admitted and the strength of that evidence. Trial counsel testified that she decided not to call the confidential informant as a witness because the informant would have likely testified that the Petitioner sold drugs to him, and because the Petitioner was not charged with a sale, it was unwise to open the door to that testimony. Trial counsel also stated that she did not file a motion to suppress evidence from the search because she did not see a basis for the motion. Additionally, she did not file a motion to recuse because she "never found any basis for it," but she did file six motions in limine. Trial counsel continued to represent the Petitioner on appeal because she believed the "judge wanted [her] to stay on the appeal rather than have the new attorney take over" and because the appellate court could not determine indigency and would not have entertained a motion to withdraw.

On cross-examination, trial counsel testified that she did not file a motion to withdraw prior to trial because "that request was heard orally several times." Trial counsel testified that she listened to the recording of the Petitioner's preliminary hearing in Davidson County General Sessions Court but did not remember the contents of the recording. She stated she normally has preliminary hearings transcribed but did not in the Petitioner's case because she "just listened to it and didn't think it was necessary." Trial counsel also explained that she did not file a motion to compel the identity of the confidential informant because the Petitioner believed he knew the identity of the informant, the informant's testimony would likely have been harmful to the Petitioner's case, and it was unlikely that the State would have disclosed the informant's identity until just before trial. Trial counsel testified that she interviewed the Petitioner's girlfriend, "Rica,"[1] but did not call her as a witness because trial counsel did not find her credible and "it seemed like a blatant attempt to get her to commit perjury."

Trial counsel testified that she discussed the motion for new trial with the Petitioner before she filed it and that she included the issues that the Petitioner raised, specifically the sufficiency of the evidence and the Petitioner's sentence. Trial counsel stated that she did not send a draft of her appellate brief to the Petitioner for him to review before she filed it but did correspond with the Petitioner by mail while she was preparing the appeal.

Following the hearing, the post-conviction court denied the Petitioner's request for post-conviction relief. The post-conviction court found that, "even considering only [the] Petitioner's testimony, [the] Petitioner has failed to establish by clear and convincing evidence that [trial counsel] neglected her duty of keeping him informed of his

---

[1] The full legal name of this individual is unclear from the record. For purposes of clarity, we will refer to her by the name and spelling used in the post-conviction court's order.

proceedings." Further, the trial court found trial counsel's testimony regarding her discussions with the Petitioner credible, including the discussions about possible defenses, trial strategy, the Petitioner's possible sentence at trial, and evidence. The post-conviction court found that there was "no legal basis for suppression" of the evidence found in the Petitioner's home and that trial counsel's testimony regarding her review of the search warrant to be credible. Finally, the post-conviction court found that the "Petitioner articulated no cognizable basis at the evidentiary hearing to relieve [trial counsel] from handling his appeal" or at trial and found counsel's testimony regarding her decision to not withdraw credible. The Petitioner's timely appeal followed.

## II. Analysis

On appeal, the Petitioner argues that trial counsel was deficient in failing to file a motion to recuse the trial judge, failing to file a motion to suppress evidence from a search of the Petitioner's home, and failing to communicate with the Petitioner, investigate witnesses, and develop a trial strategy or defense. The Petitioner further argues that he would have accepted the State's plea offer if trial counsel had informed him that he could receive a thirty-year sentence at trial and that the cumulative effect of counsel's conduct prejudiced his case.

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. Id.; Fields, 40 S.W.3d at 456 (citing Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." Fields, 40 S.W.3d at 456 (citing Henley, 960 S.W.2d at 579); see also Kendrick, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. Kendrick, 454 S.W.3d at 457.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Strickland, 466 U.S. at 687; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. Finch v. State, 226 S.W.3d 307, 316 (Tenn. 2007) (citing Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

> If a petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to do an act such as call a witness, present tangible documents for evidence, and/or file a motion to suppress, among other

actions, the petitioner is generally obliged to present the witness or the other evidence at the post-conviction hearing in order to satisfy the Strickland prejudice prong. In other words, it is incumbent upon a petitioner to prove that what he says trial counsel should have done would have had merit and produced admissible, relevant evidence.

Demarcus Sanders v. State, No. W2012-01685-CCA-R3-PC, 2013 WL 6021415, at *4 (Tenn. Crim. App. Nov. 8, 2013) (internal citation omitted), perm. app. denied (Tenn. Mar. 17, 2014). In order to show resulting prejudice from trial counsel's failure to file a pre-trial motion to suppress evidence, a petitioner "must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested." Terrance Cecil v. State, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at * 8 (Tenn. Crim. App. Sept. 12, 2011) (citing Vaughn v. State, 202 S.W.3d 106, 120-21 (Tenn. 2006)), no perm. app. filed.

**Motion to Recuse**

The Petitioner argues that trial counsel should have filed a motion asking the trial judge to be recused. The Petitioner asserts that because he was previously sentenced in the trial judge's court, the trial judge could not have been impartial while presiding over his case. Trial counsel testified at the post-conviction hearing that she did not file a motion to recuse because she found no legal basis for the motion.

"A trial judge is not disqualified because that judge has previously presided over legal proceedings involving the same defendant." State v. Reid, 213 S.W.3d 792, 815 (Tenn. 2006) (citing State v. Hines, 919 S.W.2d 573, 578 (Tenn. 1995)). The Petitioner has not proved by clear and convincing evidence that the trial court would have granted a motion to recuse or that the motion would have affected the course of his trial if the motion had been granted. Therefore, the Petitioner is not entitled to relief on this ground.

**Motion to Suppress**

The Petitioner further argues that he was prejudiced by trial counsel's decision to not file a motion to suppress evidence obtained when the Petitioner's house was searched. More specifically, the Petitioner contends that counsel's actions led to a "failure to preserve for appeal critical suppression issues . . . ." The post-conviction court summarized the Petitioner's argument regarding the motion to suppress as follows:

> [The] Petitioner testified that, in his opinion, the search warrant failed to state probable cause because (1) at his preliminary hearing he heard the

detective testify that drugs were not logged into evidence since [the] Petitioner was not charged with sale of drugs and (2) no nexus was established because the police did not see any traffic or testify [that] the residence [was] in a drug area.

Trial counsel testified that she reviewed the search warrant but found no legal basis under which to contest probable cause, and the post-conviction court found that the Petitioner "provided no legal basis for suppression" at the post-conviction hearing. The record does not preponderate against the post-conviction court's findings. The Petitioner has failed to establish that a motion to suppress would have been granted and that it would have altered the course of his trial. The Petitioner is not entitled to relief on this ground.

### Communication, Investigation of Witnesses, and Defense Strategy

The Petitioner alleges that trial counsel failed to update him on the status of his case, did not investigate potential defense witnesses, including "Rica" and the confidential informant, "developed no trial strategy, and raised no defense for [the Petitioner]." In particular, the Petitioner argues that trial counsel's failure to adequately inform him about the State's notice of enhancement that the Petitioner's maximum potential sentence at trial was thirty years. The Petitioner claims that, if he had understood before the trial that he could face a sentence of thirty years, he would have accepted the State's plea offer.

Trial counsel testified at the post-conviction hearing that she spoke with the Petitioner at court appearances and frequently asked him to meet at her office. When trial counsel received the plea offer from the State, she discussed the offer with the Petitioner along with the Petitioner's Range III offender status and his possible sentence if he was convicted at trial. Trial counsel also testified that she spoke with "Rica" and determined that she would not be a credible witness and would likely perjure herself on the stand. Trial counsel did not call the confidential informant at trial because she did not want to elicit testimony that could have exposed the Petitioner to additional criminal liability.

The post-conviction court found that the Petitioner had the ability to contact trial counsel after his arraignment and that the Petitioner also conceded that he met with counsel at his ten court dates leading up to trial. Additionally, the post-conviction court found that trial counsel reviewed discovery with the Petitioner before trial and that the Petitioner conceded at the hearing that he had discussed the State's plea offer with counsel. The post-conviction court found trial counsel's testimony credible and found that "[n]othing in the record indicates that [trial counsel] failed to meet with the Petitioner and keep him informed of the proceedings." The evidence does not preponderate against

the post-conviction court's findings on the Petitioner's communication with trial counsel and his understanding of the plea offer; therefore, the Petitioner has not established that he was prejudiced by trial counsel's communication of the plea offer. Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012) (holding that "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed" to establish prejudice).

Moreover, the evidence does not preponderate against the post-conviction court's findings regarding communication between trial counsel and the Petitioner. Regarding the Petitioner's claim that trial counsel failed to prepare a defense strategy, trial counsel testified that she discussed defending the charge on the basis that the Petitioner was a drug user, and the post-conviction court credited her testimony.

In cases where a petitioner contends that trial counsel failed to present a witness in support of the petitioner's defense, the petitioner must present such witness at the post-conviction hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither a trial nor an appellate judge can speculate as to whether that witness's testimony would have been favorable to the defense. Id. Therefore, the petitioner must "produce a material witness who . . . would have testified favorably in support of his defense if called [at trial]. Otherwise, the petitioner fails to establish the prejudice requirement mandated by Strickland v. Washington." Id. at 758. The Petitioner did not call "Rica" or the confidential informant at the post-conviction hearing; therefore, the Petitioner has not established that he was prejudiced by trial counsel's decision to not call these witnesses at trial. The Petitioner is not entitled to relief.

**Motion for New Trial and Appeal**

The Petitioner also contends that trial counsel prejudiced his case by declining to incorporate the Petitioner's suggestions of case law and arguments for the motion for new trial and appellate brief. The Petitioner states that he "instructed counsel to raise certain issues and cite specific cases on and at the motion for new trial [and] appeal," which trial counsel declined to do. The Petitioner claims that trial counsel's actions resulted in "an appeal that did not serve his interests."

Trial counsel testified that she spoke with the Petitioner when she drafted the motion for new trial in his case. She noted that the Petitioner was "upset about his conviction and the sufficiency of the evidence" and agreed to appeal those issues. Additionally, trial counsel testified that she corresponded with the Petitioner by mail

while she was preparing the appeal, and the post-conviction court accredited trial counsel's testimony.

In his brief, the Petitioner fails to identify which issues trial counsel should have argued in the motion for new trial or appellate brief, or which cases should have been cited. The Petitioner has not established that, but for trial counsel's decisions regarding which issues and cases to include in the motion for new trial and appeal, the motion would have been granted or the appeal would have been decided in his favor. For this reason, the Petitioner is not entitled to relief on this issue

**Cumulative Error**

Lastly, the Petitioner contends that "[t]he cumulative harm of [trial counsel's] errors led to [the Petitioner] not taking a plea at trial, entering trial with no strategy or defense, failure to preserve for appeal critical suppression issues, and an appeal that did not serve his interests."

The cumulative error doctrine recognizes that there may be many errors committed in trial proceedings, each of which constitutes mere harmless error in isolation but "have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). To warrant review under the cumulative error doctrine, there must have been more than one actual error during the trial proceedings. Id. at 77.

This court has considered each of the Petitioner's allegations of deficient performance and resulting prejudice, and we have concluded that the Petitioner is not entitled to relief on any ground. Therefore, consideration of the cumulative effect of counsel's alleged errors is not necessary. See Howard G. Bruff v. State, No. E2013-02223-CCA-R3-PC, 2014 WL 6977734, at *11 (Tenn. Crim. App. Dec. 10, 2014) ("Having considered each of the petitioner's issues on appeal and concluded that he is not entitled to relief for any, we need not consider the cumulative effect of the alleged errors."), no perm app. filed. Therefore, the Petitioner is not entitled to relief on this ground.

**III. Conclusion**

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE